**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
KEDNEY MERISIER, DREU VANHOOSE,   **:**    Case No.
on behalf of themselves and others similarly   **:**
situated,   **:**
  **:**
      Plaintiffs,   **:**
  **:**
  **:**
  **:**    **CLASS ACTION COMPLAINT**
  **:**
  **:**
    - against -   **:**
  **:**
HERR FOODS INCORPORATED,   **:**    JURY TRIAL DEMANDED
      Defendant.
-------------------------------------------------------- x

     Plaintiffs KEDNEY MERISIER and DREU VANHOOSE, individually and on behalf of

all other persons similarly situated, by their undersigned attorneys, as and for their Complaint

against the Defendant, allege the following based upon personal knowledge as to themselves and

their own action, and, as to all other matters, respectfully allege, upon information and belief, as

follows (Plaintiffs believe that substantial evidentiary support will be uncovered for the allegations

set forth herein after a reasonable opportunity for discovery):

<u>**NATURE OF THE ACTION**</u>

     1.     This is a consumer protection action arising out of deceptive and otherwise

improper business practices that Defendant, HERR FOODS INCORPORATED (hereinafter

"Herr's" or "Defendant"), engages in with respect to the packaging of its 3.5 oz., 3.75 oz., 6.5 oz., and 8.0 oz Herr's® potato chip products (the "Products"). The Products are sold in non-transparent aluminum bags and marketed extensively throughout the United States. They are available at numerous retail and online outlets such as Duane Reade, CVS, Rite Aid and Amazon.com.

2.      The Products are sold in various product lines, flavors, and quantities as follows:

| Product Line | Product Flavor | Product Sizes |
|---|---|---|
| Potato Chips | BBQ | 3.5 oz. |
| | Cheddar & Sour Cream | 3.75 oz. |
| | Honey BBQ | 3.75 oz. |
| | Ketchup | 3.5 oz. |
| | Lightly Salted | 3.5 oz. |
| | Old Bay | 3.75 oz. |
| | Original Crisp 'N Tasty | 3.5 oz., 6.5 oz. |
| | Red Hot | 3.5 oz., |
| | Ripples | 3.5 oz., 6.5 oz. |
| | Salt & Pepper | 3.75 oz. |
| | Salt & Vinegar | 3.5 oz., 6.5 oz. |
| | Sour Cream & Onion | 3.75 oz., 6.5 oz. |
| | The New Yorker | 3.75 oz. |
| | Dill Pickle | 3.5 oz. |
| Kettle Cooked Potato Chips | Cheddar Horseradish | 8 oz. |
| | Cracked Pepper & Sea Salt | 8 oz. |
| | Honey Sriracha | 8 oz. |
| | Jalapeno | 8 oz. |
| | Lattice Cut | 8 oz. |
| | Old Bay | 8 oz. |
| | Original | 8 oz. |
| | Reduced Fat | 8 oz. |
| | Ripple | 8 oz. |
| | Russet | 8 oz. |
| | Smoked Chipotle | 8 oz. |
| | Sour Cream & Onion | 8 oz. |
| | Dark Russet | 8 oz. |

3.      Defendant manufactures, markets and sells the Products with non-functional slack-fill in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C.

343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, as well as the laws of New York and the District of Columbia, which impose requirements identical to federal law.

4.      Images of the Products in various flavors are provided herein under **Exhibit A**. Regardless of the different sizes of the plastic and aluminum bags, the Products are invariably packaged in non-transparent wrappings so that Plaintiffs and Class members cannot see the slack-fill in the bag.

5.      The size of the plastic and aluminum chip bags in comparison to the volume of the Products contained therein makes it appear to Plaintiffs and Class members that they are buying more than what is actually being sold, thus deceiving them into making purchases they would not make at the given prices did they know the truth.

6.      For example, below is an image of a bag of Herr's® Crisp 'N Tasty Potato Chips containing 3.5 oz. of chips. *See* **Exhibit C**. The line indicates the approximate height of the potato chips inside, which reaches less than half of the total available space – only 4.5 inches out of a total bag height of 9.75 inches, about 46% of the available space, leaving 54% slack-fill:



**APPROXIMATE LINE OF FILL**

7.    Below is an image of how this bag appears once opened:



8.    While some of Defendant's slack-fill may serve the functional purpose of minimizing the breakage of chips, Defendant's total slack-fill exceeds the amount necessary for this.  This is proven by the fact that the slack-fill in Defendant's Products is significantly greater than the slack-fill in the packaging of its competitors.  Below is an image of a bag of Herr's® Crisp 'N Tasty Potato Chips containing 6.5 oz. of chips. *See* **Exhibit B**, p. 1.  The line indicates the approximate height of the potato chips inside, which reaches less than half of the total available space – only 5.5 inches out of a total bag height of 12 inches, about 46% of the available space, once again leaving 54% slack-fill:



9.     In contrast, an 8.5 oz. bag of a competitor's product, Ruffles Sour Cream & Onion Potato Chips, has about 8 inches of product in an 11.5-inch package, about 70% of the available space, leaving only 30% slack-fill.  *See* **Exhibit B**, p. 2.





10.    The Ruffles bag is half an inch *shorter*, but the chips inside reach 2.5 inches higher. Measurements and comparisons for the other Herr's Products are in **Exhibit B**.

11.    Plaintiffs and Class members viewed Defendant's misleading Product packaging, and reasonably relied in substantial part on the Product packaging's implicit representations of quantity and volume when purchasing the Products. Plaintiffs and Class members were thereby deceived into deciding to purchase the Products, whose packaging misrepresented the quantity of chips contained therein.

12.    Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons in New York and the District of Columbia, who from the applicable limitations

period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

13.     During the Class Period, Defendant manufactured, marketed and sold the Products throughout New York and the District of Columbia. Defendant purposefully sold the Products with non-functional slack-fill as part of a systematic practice.

14.     Defendant violated statutes enacted in New York and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

15.     Defendant has deceived Plaintiffs and other consumers throughout New York and the District of Columbia by misrepresenting the volume of their Products, inducing Plaintiffs and Class members to reasonably rely on Defendant's misrepresentations and purchase Products they would not have purchased otherwise (or would not have purchased at their given purchase prices). Defendant has been unjustly enriched as a result of its conduct. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of their Products that they would not have otherwise earned. Plaintiffs bring this action to stop Defendant's deceptive practice.

16.     Plaintiffs expressly do not seek to contest or enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9

18.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

19.    The Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed and sold throughout New York State.  Defendant engaged in the wrongdoing alleged in this Complaint in New York State; Defendant is authorized to do business in New York State.   Defendant has sufficient minimum contacts with New York and has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

20.    Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff MERISIER's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff MERISIER purchased Defendant's Products in Queens County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.


## PARTIES

*Plaintiffs*

21.    Plaintiff KEDNEY MERISIER is, and at all relevant times hereto has been, a citizen of the state of New York and resides in Queens County. Plaintiff MERISIER purchased the 6.5 oz. Herr's® Original Crisp 'n' Tasty Potato Chips Product for personal consumption within the State of New York. Plaintiff MERISIER purchased the Product at Merrick Farms, a grocery store located in Rosedale, New York. Plaintiff MERISIER purchased the Products for $2.00, and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

22.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff MERISIER was injured when he paid a premium price for the Product.  He paid $2.00 for the Product on the reasonable assumption that bag was filled to functional capacity.  He would not have paid this sum had he known that the bag was more than half empty or had the bag been proportioned to its actual contents.  Defendant promised Plaintiff MERISIER a full bag of chips for $2.00, but it only delivered less than half a bag, depriving him of the benefit of his bargain.  Accordingly, he was injured in the amount of the percentage of the purchase price equal to the percentage of non-functional slack-fill in the Product.  Should Plaintiff MERISIER encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

23.     Plaintiff DREU VANHOOSE is, and at all relevant times hereto has been a citizen of the District of Colombia and resides in the District of Colombia. Within the 12-month period prior to the filing of this Complaint, Plaintiff VANHOOSE purchased the 3.5 oz. Herr's® Salt & Vinegar Potato Chips Product from a Walmart supermarket in the District of Colombia. VANHOOSE purchased the Product for $0.98 and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

24.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff VANHOOSE was injured when he paid a premium price for the Product.  He paid $0.98. for the Product on the reasonable assumption that the bag was filled to functional capacity.  He would not have paid this sum had he known that the bag was half empty or had the bag been proportioned to its actual contents.  Defendant promised Plaintiff VANHOOSE a full bag of chips for $0.98, but it only delivered half a bag, depriving him of the benefit of his bargain.  Accordingly, he was injured in the amount of the percentage of the purchase price equal to the percentage of non-

functional slack-fill in the Product.  Should Plaintiff VANHOOSE encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

***Defendant***

25.     Defendant HERR FOODS INCORPORATED is a corporation organized under the laws of Pennsylvania with its headquarters at 20 Herr Dr., Nottingham, PA 19362 and an address for service of process located at 20 Herr Dr., P.O. Box 300, Nottingham, PA 19362.

26.     Defendant manufactures, markets, advertises and sells its extensive "Herr's®" line of potato chip, pretzel and onion ring snack products across the United States, including the Products purchased by Plaintiffs. Defendant manufactured, packaged, distributed, advertised, marketed and sold the misbranded Products to millions of customers nationwide, including in New York, and Washington D.C. The Products are available at numerous retail and online outlets such as Duane Reade, CVS, Rite Aid and Amazon.com.

27.     The labeling, packaging, and advertising for the Products, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owned, marketed and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## FACTUAL ALLEGATIONS

### Identical Federal and State Law Prohibit Misbranded Foods with Non-Functional Slack-Fill

28.     Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be

misbranded "[i]f its container is so made, formed, or filled as to be misleading."

29.    The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

30.    Food labeling law and regulations of New York and the District of Columbia impose requirements which mirror federal law.

31.    New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR §

259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

 "For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10…." 1 NYCRR § 259.1(a)(2).

32.    Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349.  *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions").

33.    The requirements of 21 C.F.R. § 100.100 have also been incorporated by reference into the District of Columbia Consumer Protection Procedures Act, which prohibits "sell[ing] consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law." [emphasis added] D.C. Code § 28–3904(x).

**Defendant's Products Contain Slack-Fill**

34.    Slack-fill is the difference between the actual capacity of a container and the volume of product contained within it.

35.    Defendant's Products all contain significant slack-fill.  The measurements are in **Exhibit B**, and they show the following levels of slack-fill:

a.    Herr's 6.5 oz. Bag: Approximately 54% Slack-Fill; *see* **Exhibit B**, p. 1

b.    Herr's 8.0 oz. Bag: Approximately 42% Slack-Fill; *see* **Exhibit B**, p. 4

    c.   Herr's 3.5 oz. Bag: Approximately 50% Slack-Fill: *see* **Exhibit B**, p. 7

    d.   Herr's 3.75 oz. Bag: Approximately 58% Slack-Fill; *see* **Exhibit B**, p. 10

## Defendant's Slack-Fill is Non-Functional

36.    The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

> FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in § 100.100(a) apply to that portion of the slack-fill within a container that is necessary for, or results from, a specific function or practice, e.g., the need to protect a product. <u>Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill.</u> Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is necessary to accomplish a specific function. FDA advises that <u>these exceptions do not exempt broad categories of food</u>, such as gift products and convenience foods, from the requirements of section 403(d) of the act. For example, § 100.100(a)(2) recognizes that some slack-fill may be necessary to accommodate requirements of the machines used to enclose a product in its container and is therefore functional slack-fill. However, § 100.100(a)(2) <u>does not exempt all levels of slack-fill in all mechanically packaged products from the definition of nonfunctional slack-fill</u>. [emphasis added] 58 FR 64123, 64126

37.    Thus, the possibility that some portion of the slack-fill in Defendant's Products may be justified as functional based on the exemptions in §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose—protecting contents, accommodating the machines that enclose the contents, accommodating settling, etc.  Such slack fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing.  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6).").

38.    That Defendant's Products contain slack-fill in excess of what is permitted under § 100.100 is proven by the fact that other brands of potato chips contain significantly less slack-fill. The similarly sized bags of Defendant's competitors contain significantly less slack-fill, and thus

more chips, notwithstanding factors like the need to protect package contents or accommodate machines and settling.  This is documented in **Exhibit B** and summarized here below:

   a.  Herr's 6.5 oz. Bag (12 inches tall): 54% slack-fill **versus** Ruffles 8.5 oz. Bag (11.5 inches tall): 30% slack-fill; *see* **Exhibit B**, pp. 1-3.

   b.  Herr's 8.0 oz. Bag (12 inches tall): 42% slack-fill **versus** Ruffles 8.5 oz. Bag (11.5 inches tall): 30% slack-fill; *see* **Exhibit B**, pp. 4-6.

   c.  Herr's 3.5 oz. Bag (10 inches tall): 50% slack-fill **versus** Lays 6.25 oz. Bag (12 inches tall): 33% slack-fill: *see* **Exhibit B**, pp. 7-9.

   d.  Herr's 3.75 oz. Bag (9.5 inches tall): 58% slack-fill **versus** Lays 6.25 oz. Bag (12 inches tall): 33% slack-fill: *see* **Exhibit B**, pp. 10-12.

39.    The slack-fill in Herr's Products varies between different bags.  But it is in every case greater than the slack-fill in the similarly sized bags of its competitors.  Whereas the latter keep their slack-fill to approximately 30%, the Herr's Products significantly exceed this threshold.  The comparison is between the same kind of product in the same kind of packaging that is enclosed in the same way by the same kind of technology.  And yet Herr's competitors manage to package their chips in a way that leaves consumers with a more accurate sense of how much food they are actually purchasing.  Thus, whatever real constraints <u>might</u> justify 30% slack-fill in the competitor chips cannot explain the excess slack-fill in the Herr's Products.

**<u>Defendant's Non-Functional Slack-Fill is Deceptive and Misleading</u>**

40.    The real explanation lies in Defendant's desire to mislead consumers about how much product they are actually purchasing and thus increase sales and profits.  Defendant uses non-functional slack-fill to mislead consumers into believing that they are receiving more chips than they are actually receiving.  The packaging of the Products is uniformly made out of non-

16

transparent wrappings so that consumers cannot see the slack-fill therein, thus giving Plaintiffs and the Class the false impression that there is more food inside than is actually there.

41.    Even if Defendant's net weight disclosures are accurate, such does not eliminate this basic deception.  The FDA has confirmed this in unequivocal terms:

> FDA disagrees with the comments that stated that net weight statements protect against misleading fill. FDA finds that <u>the presence of an accurate net weight statement does not eliminate the misbranding</u> that occurs when a container is made, formed, or filled so as to be misleading. [emphasis added] 58 FR 64123, 64128

> Section 403(e) of the act requires packaged food to bear a label containing an accurate statement of the quantity of contents. This requirement is separate and in addition to section 403(d) of the act. <u>To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant</u>. In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d sess. 9 (1934)) in arriving at section 403(d) of the act that that section is "intended to reach deceptive methods of filling where the package is only partly filled and, <u>despite the declaration of quantity of contents on the label,</u> creates the impression that it contains more food than it does." Thus, Congress clearly intended that failure to comply with either section would render a food to be misbranded. [emphasis added] 58 FR 64123, 64128-64129

42.    While consumers may have come to expect significant slack-fill in potato chips and other snack products, this too does not eliminate Defendant's deception.  The FDA has stated that "although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional." 58 FR 64123, 64131

**Plaintiffs and the Class Reasonably Relied on the Size of the Products' Packaging as an Indicator of How Much Food They Were Purchasing**

43.    At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products contained non-functional slack-fill as set forth herein, and would not have bought the Products at the given prices had they known the truth about them.

44.    Defendant's Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products because reasonable consumers would attach importance to the quantity of food they believe they are purchasing.

45.    Plaintiffs and the Class reasonably relied on the size of the Products' packaging to infer how much food they were purchasing and reasonably believed that the bags were filled as closely to capacity as functionally possible.   The FDA has explained why such reliance is reasonable:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "<u>Packages have replaced the salesman</u>. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). <u>Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container.</u> Further, Congress stated (S. Rept. 361, supra at 9) that "<u>Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.</u>" [emphasis added] 58 FR 64123, 64131

46.    Congress recognized that the size of a package is in and of itself a kind of sales pitch, even if not made with words or numbers. Thus, consumers can reasonably rely on packaging size as a representation of quantity regardless of whatever is printed on the label.   And manufacturers can be held responsible for non-functional slack-fill regardless of whatever else they say.

47.    Defendant might argue that Plaintiffs and the Class should not have relied on the packaging's size to infer its contents because they could have manipulated the packaging in order to acquire a sense of the slack-fill therein (i.e., shaking the package to hear the chips rustling or poking it to feel the air).   But the FDA has stated that such manipulation cannot be reasonably expected of consumers:

FDA advises that the entire container does not need to be transparent to allow consumers to fully view its contents, i.e., a transparent lid may be sufficient depending on the conformation of the package. On the other hand, FDA finds that <u>devices, such as a window at the bottom of a package, that require consumers to manipulate the package, e.g., turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container</u>. FDA finds that such devices do not adequately ensure that consumers will not be misled as to the amount of product in a package. Therefore, such foods remain subject to the requirements in § 100.100(a) that slack-fill in the container be functional slack-fill. [emphasis added] 58 FR 64123, 64128

The FDA was here contemplating a scenario in which manipulating a package might permit an accurate visual estimate of its contents.  This is clearly impossible in the case of Defendant's wholly non-transparent packaging, which can only provide audial or tactile clues as to the Products' slack-fill.  But the same basic principle applies: the possibility that manipulating a package might yield additional insight into its contents does not exculpate non-functional slack-fill (just as accurate net weight disclosures do not).

**Plaintiffs and the Class Were Injured as a Result of Defendant's Deceptive Conduct**

48.    Plaintiffs and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving.  Since they would not have agreed to this exchange had they known the truth, they were deprived of the benefit of their bargain.  In order for Plaintiffs and Class members to be made whole, they must be compensated in an amount consisting in the percentage of the purchase price equal to the percentage of non-functional slack-fill in the Products.

49.    *See Lazaroff v. Paraco Gas Corp.*, 2011 NY Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 (Sup. Ct.) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane

he was promised…Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint, Plaintiff seeks monetary damages on the grounds that he "would not have paid the premium price he paid" to buy the Products had he "known the truth."… Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.")

## CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following two Classes:

*The New York Class*

51.    Plaintiff MERISIER seeks to represent  the following class:

All New York residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. (the "New York Class")

*The District of Columbia Class*

52.    Plaintiff VANHOOSE seeks to represent the following class:

All District of Columbia residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. (the "D.C. Class")

53.    The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

54.    The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and

can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

55.    Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct.

56.    Plaintiffs will fairly and adequately protect the interests of the members of the Classes in that Plaintiffs have no interests antagonistic to those of the other members of the Classes. Plaintiffs have retained experienced and competent counsel.

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Classes to individually seek redress for the wrongful conduct alleged herein.

58.    Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the common questions of law and fact to the Classes are:

   i. Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging and labeling;

   ii. Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

   iii. Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

iv.  Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

v.  Whether the packaging of the Products during the relevant statutory period constituted unlawful non-functional slack-fill;

vi.  Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vii.  Whether the members of the Classes have sustained damages as a result of Defendant's wrongful conduct;

viii.  Whether Defendant purposely chose non-transparent plastic and aluminum Product bags so that Plaintiffs and Class members would not be able to see the amount of slack-fill contained in the Products;

ix.  The appropriate measure of damages and/or other relief;

x.  Whether Defendant has been unjustly enriched through its scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

xi.  Whether Defendant should be enjoined from continuing its unlawful practices.

59.  The membership of the Classes is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

60.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

61.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

62.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

63.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

64.    Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

# CAUSES OF ACTION

## COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
#### (Brought on Behalf of the New York Class)

65.    Plaintiff MERISIER realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

66.    Plaintiff MERISIER brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

67.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

68.    Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

69.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packaging resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403 (21 U.S.C. 343(d)). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading."

70.    The foregoing deceptive acts and practices were directed at consumers.

71.    Defendant should be enjoined from packaging its Products with non-functional slack-fill as described above pursuant to NY GBL § 349, New York Agm. Law § 201, and the FDCA, 21 U.S.C. § 343(d).

72.    Plaintiff MERISIER, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**
**(Brought on Behalf of the New York Class)**

73.    Plaintiff MERISIER realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

74.    Plaintiff MERISIER brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

75.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful acts or practices, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

76.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding their Products so that they appear to contain more in the packaging than is actually included.

77.    The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packages resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA (21 U.S.C. § 343(d)) in that said Products are misbranded.

78.    The foregoing deceptive acts and practices were directed at consumers.

79.    Plaintiff MERISIER and the other New York Class members suffered a loss as a result of Defendant's deceptive and unfair trade practices. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff MERISIER and the other New York Class members suffered monetary losses from the purchase of Products, i.e., receiving less than the capacity of the packaging due to approximately 58% to 42% non-functional slack-fill in the Products. In order for Plaintiff MERISIER and New York Class members to be made whole, they must receive a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

## COUNT III

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)
### (FALSE ADVERTISING)
#### (Brought on Behalf of the New York Class)

80.    This claim is brought on behalf of Plaintiff MERISIER and members of the New York Class against Defendant.

81.    Plaintiff MERISIER realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

82.    Defendant has been and/or is engaged in the "conduct of...business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

83.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising means "advertising, including labeling, of

a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

84.    Pursuant to the FDCA as implemented through 21 C.F.R. § 100.100, package size is an affirmative representation of quantity.  Thus, the non-functional slack-fill in Defendant's Products constituted false advertising as to the quantity of chips contained therein.  Defendant caused this false advertising to be made and disseminated throughout New York.  Defendant's false advertising was known, or through the exercise of reasonable care should have been known, by Defendant to be untrue and misleading to consumers and the New York Class.

85.    Defendant's affirmative misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

86.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its misrepresentations and/or omissions regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

87.    Plaintiff MERISIER and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Products, Plaintiff MERISIER and members of the New York Class relied on the misrepresentations regarding the quantity of the Products that was actually food rather than non-functional slack-fill. Those representations were false and/or misleading because the Products contain substantial hidden non-functional slack-fill. Had the New York Class known this, they would not have purchased their Products or paid as much for them.

27

88.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff MERISIER and members of the New York Class seek monetary damages (including actual, minimum, punitive, treble, and/or statutory damages), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## VIOLATIONS OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT
### D.C. Code § 28-3901 *et seq*.
### (Brought on Behalf of the D.C. Class)

89.     Plaintiff VANHOOSE realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

90.     Plaintiff VANHOOSE brings this claim individually and on behalf of the other members of the D.C. Class for Defendant's violations of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq*.

91.     The purpose of the CPPA is to "assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices," to "promote, through effective enforcement, fair business practices throughout the community," and to "educate consumers to demand high standards and seek proper redress of grievances. D.C. Code §§ 28-3901(b)(1)-(3). The CPPA's provisions are to be "construed and applied liberally to promote its purpose." D.C. Code § 3901(c).

92.     Plaintiff VANHOOSE and the D.C. Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff VANHOOSE and the D.C. Class members are "consumers" as that term is defined in D.C. Code § 28-3901(a)(2).

93.     Products that Plaintiff VANHOOSE and other D.C. Class members purchased from Defendant were "goods" within the meaning of D.C. Code § 28-3901(a)(7).

94.     Defendant's actions, representations, and conduct have violated, and continue to violate, the CPPA because they extend to transactions that are intended to result, or which have resulted in, the sale of goods to consumers.

95.     Defendant violated federal and District of Columbia law because the Products contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

96.     The District of Columbia's CPPA, D.C. Code § 28-3904(a) prohibits as an unlawful trade practice "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate the CPPA, because the purpose and effect of its oversized bags is to misrepresent the quantity of chips that Plaintiff and other consumers are purchasing.

97.     D.C. Code § 28-3904(e) further prohibits "misrepresent[ing] as to a material fact which has a tendency to mislead" as an unlawful trade practice. By engaging in the conduct set forth herein, Defendant violated and continues to violate the CPPA. The size of its potato chip bags was a material consideration in Plaintiff's and other consumers' decision to purchase Defendant's Products and misled Plaintiff and the D.C. Class about the quantity of chips contained therein.

98.     D.C. Code § 28-3904(h) also prohibits as an unlawful trade practice "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered." By engaging in the conduct set forth herein, Defendant violated and continues to violate the CPPA, because the size of Defendant's potato chip bag advertises a larger quantity of chips than Defendant is actually selling.

99.    Additionally, D.C. Code § 28–3904(x) prohibits "sell[ing] consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law." Thus, any violation of 21 C.F.R. § 100.100 is also a violation of the DCCA.

100.    The violations set forth above are violations "whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code § 28-3904

101.    Plaintiff VANHOOSE and the D.C. Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff VANHOOSE and the D.C. Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

102.    Plaintiff VANHOOSE and the D.C. Class suffered injuries caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein; and (b) the Products did not have the quantities as promised.

103.    Pursuant to D.C. Code § 28-3905(k)(1)(A), Plaintiff is entitled to recover the greater of treble damages or $1,500 per violation from Defendant.

104.    Pursuant to D.C. Code § 28-3905(k)(1)(B), Plaintiff is entitled to recover reasonable attorney's fees from Defendant.

105.    Pursuant to D.C. Code § 28-3905(k)(1)(C), Plaintiff is entitled to recover punitive damages from Defendant.

106.    Pursuant to D.C. Code § 28-3905(k)(1)(D), Plaintiff is entitled to seek an injunction against Defendant's continuing use of non-functional slack-fill to deceive and mislead consumers.

107.    Pursuant to D.C. Code § 28-3905(k)(1)(F), Plaintiff is entitled to any other relief which the Court deems proper.

108.    Wherefore, Plaintiff VANHOOSE seeks the greater of treble damages or $1500 per violation, punitive damages, injunctive relief, and any other relief that the Court deems proper for the violations of the CPPA set forth above.

## COUNT V

### UNJUST ENRICHMENT
**(Brought on Behalf of the New York and D.C. Classes)**

109.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

110.    As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendant was enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendant's Products.

111.    Plaintiffs and members of the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

112.    Defendant will be unjustly enriched if allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

113.    Under the circumstances, it would violate equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and others similarly situated, given that the volume of the Products purchased by Plaintiffs and the Class was not what Defendant represented it as being through the Products' packaging.  It would be unjust and

inequitable for Defendant to retain the benefit of selling its Products in packaging containing non-functional slack-fill without restitution to Plaintiffs and others similarly situated. In order for Plaintiffs and Class members to be made whole, they must receive a refund of a percentage of the purchase price of the Products equal to the percentage of non-functional slack-fill in them.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

(A)    For an Order certifying the New York and D.C. Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of their respective Classes and Plaintiffs' attorneys as Class Counsel to represent members of both Classes;

(B)    For an Order declaring that Defendant's conduct violates the statutes referenced herein;

(C)    For an Order finding in favor of Plaintiffs and members of the Class;

(D)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)    For prejudgment interest on all amounts awarded;

(F)    For an Order of restitution and all other forms of equitable monetary relief;

(G)    For injunctive relief ordering Defendant to repackage the Products without non-functional slack-fill;

(H)    For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)    For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: November 15, 2016

Respectfully submitted,

/s/ C.K. Lee
By:  C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*